IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | | |
|---|---|---|
| DEBORAH A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:12-CV-01801-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Deborah Johnson, appearing pro se, appeals the Commissioner's decision denying her concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Johnson alleged disability beginning March 31, 2002, due to anxiety, depression, traumatic brain injury, and cognitive impairment, leaving her unable to concentrate, think clearly, or remember instructions. She alleged that chronic pain in her feet, back, neck, and shoulders impaired her ability to lift and stand or walk for long periods. Admin. R. 257. She satisfied the insured status requirements for a disability insurance claim through June 30, 2011, and must

establish that she was disabled on or before that date to prevail on her Title II claim. *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ applied the sequential disability determination process described in 20 C.F.R. sections 404.1520 and 416.920. *See Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). The ALJ found that Johnson's ability to work was adversely affected by opioid dependence, alcohol dependence, major depressive disorder, personality disorder, degenerative disc disease of the lumbar region of the spine, and chronic foot pain. Admin. R. 22. The ALJ found that the combination of these impairments left Johnson with the residual functional capacity ("RFC") to perform a range of light work with limited standing, walking, postural activities, and exposure to irritants or hazards. She could perform only unskilled work with limited exposure to the public. The ALJ found that Johnson's substance dependence would cause her to miss work at unpredictable times for up to eight hours per week. Admin. R. 24. Based on testimony from the vocational expert ("VE"), the ALJ concluded that, in light of her RFC assessment including the effects of substance dependence, Johnson could not work in competitive employment. Admin. R. 28.

A claimant cannot be considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J); *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001); 20 C.F.R. §§ 404.1535(a); 416.935(a). Substance abuse is a material factor when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b); 416.935(b).

Accordingly, the ALJ performed the sequential evaluation a second time, excluding the

functional effects of substance abuse. He determined that, if Johnson ceased using alcohol and opioid substances, her RFC would remain the same, except that she would be able to maintain a normal work schedule without excessive unpredictable absences. Admin. R. 29. The VE testified that a person with Johnson's RFC in the absence of substance abuse could perform the activities required in light, unskilled occupations such as electronics worker, sporting goods assembly, and small product assembly, representing hundreds of thousands of jobs in the national economy. Admin. R. 34, 85. The ALJ concluded that substance abuse was a contributing factor material to Johnson's inability to work and that Johnson could not be considered disabled within the meaning of the Social Security Act. Admin. R. 35.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995).

On judicial review, the claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue,* 640 F.3d 881, 886-87 (9th Cir. 2011). In addition, in cases involving substance abuse, the claimant bears the burden of proving that drug addiction or alcoholism is not a contributing factor material to the disability determination. *Ball v. Massanari,* 254 F.3d 817, 821 (9th Cir. 2001).

-3-   OPINION AND ORDER

## DISCUSSION

### I.    Claims of Error

Although Johnson appears pro se in this appeal, she was represented by counsel during the administrative proceedings before the ALJ and the Appeals Council. Based on Johnson's pro se brief and the arguments presented by her former counsel during administrative proceedings, her challenge to the Commissioner's decision rests on the following grounds.

Johnson contends the ALJ failed to assess her RFC accurately because he erroneously discredited her subjective statements without providing legally sufficient reasons, improperly discounted the findings and opinions of Jeffrey Sher, Psy.D., and Bridget O'Neill, M.S.W., and failed to address the third party statement of Sarah Fundahn.

### II.    Credibility Determination

In her pro se brief, filed in December 2013, Johnson described her history of injuries, alcohol abuse, abuse of prescription medications, and current ongoing symptoms. She said she stopped using alcohol years ago, but continued to abuse prescription pain medications until two years ago, when she began a prescription for Suboxone. She said she has been active in her recovery since November 2009 and has shown a great deal of improvement with substance abuse, although she continues to struggle with addiction issues, lack of housing, and lack of income. She diligently participates in group therapy, classes, and various other services. She contends that, despite her improvement, she cannot work due to continuing chronic back pain, pain in her feet, poor memory for conversations and instructions, depression, anxiety, cognitive deficits, attention deficits, inability to multitask, slow reading speed, verbal inhibition, poor information processing, and difficulty problem solving.

-4-    OPINION AND ORDER

At the administrative hearing in April 2011, Johnson attributed her most debilitating symptoms to mental health issues, foot pain, and back pain. Admin. R. 60-62. She said she could not return to her previous work due to confusion and anxiety. Admin. R. 54-55. She said she must lie down a lot during the day, can sit for a couple of hours, stand for 15 minutes, and walk for about 30 minutes at a time. She said she could lift up to 30 pounds. Admin. R. 62, 65-66. Johnson admitted a long history of alcohol and prescription drug abuse, but said that from about December of 2009, she had been compliant with treatment without using alcohol or seeking excessive drugs, with the exception of a brief relapse in November 2010. Admin. R. 69-82.

As the ALJ's RFC assessment reflects, he accepted that Johnson had mental impairments that limited her to unskilled work with limited exposure to the public and that physical limitations restricted her to light work with limited standing and walking and only occasional climbing, balancing, stooping, kneeling, crouching or crawling. Admin. R. 24. He also found Johnson credible regarding her inability to work when the effects of substance abuse were considered. Admin. R. 24. The ALJ found that Johnson's statements regarding the persistence, intensity, and limiting effects of her symptoms in the absence of substance abuse were not credible, however, to the extent she claimed to be unable to perform work within the limitations of her RFC assessment in the absence of substance abuse. Admin. R. 30.

The ALJ said that Johnson's medically determinable impairments could reasonably be expected to cause the symptoms she alleged and he did not make a finding that she was malingering. Admin. R. 30. Under such circumstances, an ALJ must assess the credibility of the claimant regarding the severity of symptoms. An adverse credibility determination must

include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to proper factors for evaluating credibility. He discussed the medical evidence which included minimal objective findings of physical impairment. Admin. R. 31. For example, Johnson complained of debilitating back pain, but objective findings were normal except for a lumbar strain and early degenerative changes. Admin. R. 31. Johnson complained of debilitating foot pain, limiting her ability to walk. She was treated conservatively with a recommendation to obtain orthotics. Admin. R. 31, 357. In follow up, Johnson described nonspecific aching foot pain that was inconsistent with diagnoses of flat feet or neuropathy. Her treating physician concluded that she was trying to obtain mood altering substances consistent with her known history of overusing opiates and benzodiazepines. Admin. R. 352. Thereafter, with the exception of an acute fracture of the left foot in 2009, her clinical findings were generally mild, primarily swelling in the legs

-6-   OPINION AND ORDER

and feet, and her treatment remained very conservative. Admin. R. 32, 1093, 1422, 2421. The inconsistency between Johnson's claims of debilitating symptoms and the minimal objective evidence supports an adverse inference as to the credibility of her claims. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ considered Johnson's treatment history. As Johnson concedes, her treatment history reflects overwhelming evidence of drug seeking behavior and addiction to prescription benzodiazepines and opiate pain medications. This involved extensive lying to treating physicians and emergency room staff to obtain medications from multiple prescribing sources at the same time. Johnson lied about the medications she was taking and misrepresented her symptoms. Admin. R. 24-27, 30. This history supports an adverse inference as to the credibility of her statements about her current symptoms.

Johnson's treatment history also reflects that, although she alleges disability beginning in 2002, she attributes her most debilitating symptoms to an accident that did not happen until April 2008, and a later brain aneurysm. Admin. R. 24, 53-54. Similarly, Johnson did not seek treatment for foot pain until August 2008. Admin. R. 31. Clearly, the allegedly disabling symptoms that began in 2008 cannot credibly support her claim of disability beginning six years earlier.

Johnson's treatment history includes several chemical dependency treatment programs, which can only be described as unsuccessful. Admin. R. 24, 299. Johnson says that, unlike in her earlier treatment programs, beginning in November 2009 she has been actively involved in recovery and has made significant improvement. Admin. R. 24, 30. Without denigrating Johnson's efforts to overcome her dependence problems, her history of poor results from

previous recovery efforts gives reason to view her current claims of improvement with caution. Similar claims in the past have not been true. In December 2009, for example, Johnson told the Social Security Administration she had been clean and sober for two years. Admin. R. 30, 299. In June 2009, she told an examining physician that she had been sober of alcohol for a number of years. Admin. R. 633. In fact, records from the preceding two years reflect treatment for alcohol and opiate intoxication and withdrawal, frequent instances of drug seeking emergency room visits, and numerous reports from a variety of treating physicians reflecting prescription overuse. Admin. R. 25-27. These inconsistencies lend further support to the ALJ's adverse inference as to the reliability of Johnson's subjective statements.

The ALJ considered Johnson's reported daily activities. In 2009, Johnson reportedly managed all activities of daily living independently, including self care and hygiene, meal preparation, use of public transportation, attending to frequent regular appointments with case managers, counselors, and group sessions, cleaning house, and washing dishes and laundry. Admin. R. 301-08, 633. At the administrative hearing, Johnson said she regularly attended a number of programs, including classes at Ready to Rent, meetings with her case manager, group therapy sessions at Life Works, group therapy sessions at a methadone clinic, and mental health group therapy sessions required for her probation for a charge of stealing alcohol. Admin. R. 57. The ALJ found these activities showed that, when not abusing substances, Johnson has the ability to comply with schedules, interact appropriately with others, and understand instructions and conversations well enough to navigate social services. Admin. R. 30. Johnson also reported periods of work as a telemarketer during the period for which she claims disability. Admin. R. 79-80. She was fired from these jobs for poor attendance, "personal problems," and for being

sent to jail. Admin. R. 632. The ALJ found that these periods of work suggested that Johnson

was not as impaired as she claimed, if the effects of substance abuse were excluded. Admin. R.

30.

Based on the foregoing, the ALJ's findings are based on clear and convincing reasons

supported by substantial evidence. *Carmickle*, 533 F.3d at 1160; *Smolen*, 80 F.3d at 1281-82.

The findings are sufficiently specific for me to conclude that the ALJ did not discredit Johnson's

testimony arbitrarily. *Tomasetti*, 533 F.3d at 1039.

**III.    Opinions of Mental Health Care Providers**

Johnson contends the ALJ improperly discounted the findings and opinion of Jeffrey

Sher, Psy.D. In June 2009, Dr. Sher performed a Psychological Assessment based on a clinical

interview, mental status examination, and administration of standard psychological testing. On

mental status examination, Johnson's speech was spontaneous, fluent, and articulate. Her affect

was somewhat restricted with a tendency toward easy irritability and a low tolerance for

frustration. Her thoughts were goal oriented without evidence of a thought disorder. She was

well oriented and able to understand simple instructions without difficulty. Admin. R. 631, 633.

On a self reporting inventory for depression, Johnson responded in a fashion consistent

with moderate depression. On formal testing, Johnson gave adequate effort on simple tasks, but

gave up quickly on more complicated tasks. Overall, Dr. Sher observed that Johnson's approach

to the formal testing was marked by poor effort. As a result, he believed Johnson performed

below her actual ability level on all the formal testing. On Trail Making and intelligence testing,

Johnson scored in the borderline range, but Dr. Sher believed her actual ability was in the low

average range. Admin. R. 634-35. On memory testing, Johnson responded in a highly unusual

fashion that Dr. Sher found invalid. Admin. R. 636.

Dr. Sher diagnosed a depressive disorder of moderate severity, ongoing opioid dependence, alcohol dependence, and a personality disorder with antisocial and borderline features. Due to her lack of effort on formal testing, Dr. Sher could not rule out malingering, but said further evaluation would be necessary to make that determination. Dr. Sher opined that Johnson's history of disregard for social norms suggested a significant personality disorder that interfered with social and occupational functioning. Admin. R. 636-37.

The ALJ did not discredit Dr. Sher's findings and opinion. He found that Dr. Sher's report was generally consistent with the record as a whole and supported the RFC assessment limitations restricting Johnson to unskilled work involving limited social interactions. Admin. R. 33. The ALJ's interpretation of this evidence is reasonable and must be upheld, even if it might also support another rational interpretation more favorable to Johnson. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

Johnson argues that Dr. Sher's opinion compels further development of the record, which already comprises nearly 3000 pages. An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Dr. Sher suggested further evaluation would help determine whether Johnson was malingering. The ALJ reached his final determination, however, without finding that Johnson was malingering. As a result, clarification of the malingering question would not benefit Johnson. Accordingly, the ALJ had no duty to develop the record further on that issue.

Johnson also contends the ALJ ignored the statements of Bridget O'Neill, M.S.W. Ms.

O'Neill is a counselor at a nonprofit mental health and addiction services provider. In January 2011, Ms. O'Neill said that Johnson met the diagnostic criteria for Major Depressive Disorder with symptoms of depressed mood, diminished interest in activities, fatigue, feelings of worthlessness and guilt, and difficulty concentrating and making decision. Ms. O'Neill opined that these symptoms made it difficult for Johnson to maintain a consistent schedule and to interact with many people for long periods of time. She said Johnson suffered from other medical conditions that impaired her ability to complete certain unidentified tasks. She said that Johnson had been working hard toward completing her goals. Admin. R. 2468.

Social workers are not "acceptable medical sources" within the meaning of the regulations. 20 C.F.R. §§ 404.1513, 416.913. The opinions of such sources must be considered, but may be discounted if the ALJ provides reasons that are germane to the witness for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ found Ms. O'Neill's statements were not persuasive because she did not address the effects of Johnson's use of drugs and alcohol and because Johnson's own statements reflected that she could maintain the schedule of her various appointments and engage in interactions with others. Admin. R. 33. Other germane reasons supporting the ALJ's assessment of Ms. O'Neill's statements may be inferred from the ALJ's evaluation of the other evidence in the record, including his evaluation of Johnsons' credibility, the medical opinions, and the lay witness statements. Accordingly the ALJ did not erroneously ignore this evidence.

## IV.    Lay Witness Statement

Johnson contends the ALJ did not address the lay witness statement of Sarah Fundahn, an advocate and case manager at a nonprofit agency that operates a transitional housing program.

Fundahn had contact with Johnson when she stayed at the shelter for periods in 2008, 2009, and 2010. Fundahn said that Johnson worked very hard to overcome her addiction, was always courteous and respectful, followed the program rules, kept her room tidy, helped with household chores, and kept her appointments. She said Johnson was approachable and friendly. Admin. R. 326.

The ALJ said Fundahn's statements suggested that Johnson was quite functional. Admin. R. 33. Indeed, the ability to keep appointments, follow rules, engage in routine daily activities, and interact appropriately with residents and staff at the shelter indicate that Johnson's functional limitations are not as great as she claims. Fundahn's statement supports the ALJ's conclusion that, when abstinent from substance abuse, Johnson can perform the activities required for unskilled work within the limitations of her RFC.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___13th___ day of March, 2014.

_____
Robert E. Jones, Senior Judge
United States District Court